The next case is Trimed v. Stryker, 2009, 1423. Mr. Grossman. Thank you. Good morning, Your Honors. May it please the Court. We respectfully request this Court to reverse the District Court and its finding of the patent suit was obvious. The District Court totally ignored Trimed's description of the scope and content of the prior art, which was highly disputed. The District Court also ignored Trimed's statement of its differences between the prior art and the claims of the 839 patent. Of course, what the District Court did was follow the findings of fact and conclusions of law of your opponent. Your opponent's statement, and you're saying your opponent ignored him. Yeah, the opponent ignored him, and the judge followed Stryker, who ignored him. But weren't they presented to the Court? Sure, they were presented in our statement of facts. So the Court didn't necessarily ignore them. The Court just adopted a document that didn't discuss them. I agree that's what the Court did, which I think has the effect of ignoring them. Because this is summary judgment. If this were a trial, it would be a different situation. But this is summary judgment. Yes, Your Honor. In summary judgment, our facts, Trimed's facts, if they're supported, have to be— Your argument is the Court can't say there's no dispute over the facts when there, in fact, is. Yes, Your Honor. Not on summary judgment. Yes, Your Honor. And all three of the four obviousness inquiries, factual, were highly disputed. The objective, indicia, the scope and content of the prior art, and the differences between the claims and the prior art. Secondary considerations? Yes, Your Honor. Substantial secondary considerations. And those are the striker's comments that the 839 patent that Tim played was new, revolutionary. And those are buzzwords that typically a plaintiff tries to describe as products of striker. That they admittedly copied, obtained, sent to Germany for copying. That it changed the way surgeons performed these operations. That it was urgent that striker obtain Trimed's patent that Tim played. Was there any dispute over what these references themselves disclosed? Yes, Your Honor. I mean, for example, in the May reference, is there any dispute that there were holes disclosed, and that some holes were bigger than others, and some holes were used for guide wires, etc., etc.? Yes, the dispute regarding May, Your Honor, was, there were multiple disputes. One was the holes 8 that were used for Trimed's positions, those are only used for, put temporary guide wires in. Not pins. Not pins. And those guide wires would not reverse the fracture into the stable bone and fixate the fracture. And striker's allegation was those guide wires are fixation pins. And our position was they're not fixation pins. Now, regarding May, one of the very important claimed elements is that the fixation pin enters the stable fragment traversing the fracture, extension of the fractured fragment, while preventing compression along the fracture. May uses screws, which is the old way, which would cause compression across the fracture. But even striker's expert in his declaration and in his chart does not say that May will prevent compression across the fracture. And that's a very important claimed element. Does May allow the pin, the fixation pin to slide axially? The guide wire. The guide wire. Okay, so it allows the guide wire. Yes, it will go axially into the hole 8, but it's not going to prevent compression. Because it's removed. It's removed and it's not fixating anything. And you have compression caused by the screws that go into hole 7 and hole 6, in which one of the bones, the stable fragment, is brought up against the plate. And the fractured fragment is independently brought up against the plate, thereby causing compression across the fracture. So May, in and by itself, doesn't disclose the critical element, the last element of the claim. My understanding is that the structure disclosed in the Clancy reference is the use of these K wires inserted percutaneously. In other words, inserted through the skin. And inserted for a period of time and at an 8-week mark after insertion, they would be removed. And not left implanted in a patient. Whereas the structure disclosed in the May reference contemplates a plate that would be inserted and implanted into a patient, screwed into the various bone joint portions and left implanted in the patient. Is my understanding of the reference correct? Yes, Your Honor, if I can add. And was there any disputed question of fact presented on the record as to how these various structures operated and what effect the use of pins might be in an implant situation compared with what effect an implanted structure might have, if at all, in any kind of percutaneous operation? There were disputed facts in that regard, Your Honor. There was a lot there. the bone as the plate is being aligned and screwed into the fractured and stable fragment. And those pins, those guide wires never traverse the fracture and never enter the stable bone and do not fixate the fracture and are only in there temporarily and are subsequently removed after the fracture is secured with the bones, with the screws in the plate. That's what TriMet's position was. Stryker's position was pins would go into the guide wire holes eight, and that's it. There was no further statement of those. And so there has to be further statement because the claims required more than pins going into holes. What I was trying to get at, and I apologize probably in an inarticulate way, was whether the question before us is the existence of genuine issues of material fact or simply the ultimate question of obviousness. Because I know in the brief there's lots of discussion about, well, there are all kinds of genuine issues of material fact. But if indeed there are no genuine issues of material fact because it's apparent and everybody is in agreement as to what the reference is disclosed, then the question is really one of law, the ultimate conclusion of obviousness. Okay, I got it. I'll respond. Okay. With regard to Clancy, we discussed each three-piece prior art quickly. With regard to Clancy prior art, both parties agreed it's percutaneous pinning in which the pins are inserted. I don't think there's a dispute that the pins are subsequently removed. In addition, TriMet states that an external cast is required to totally immobilize the arm from the shoulder to the wrist, stabilize so the pins don't move. Stryker didn't mention that in their brief but didn't contest that fact in the briefing. So I don't think Clancy is in dispute. Regarding May, again, TriMet's facts were those guide wires are not fixation pins and do not traverse the fracture and are temporarily removed and don't have many of the claimed elements. Okay. Stryker's position was you have pins and you have holes. You have wires and you have holes. We agree with that. There's wires and there are holes. But there's a lot more that's required under the claim. Stryker didn't argue with that. So their facts were wrong. We said why they're right, what the right facts were, and there's more. I guess there's a dispute there of what May is. But I don't know if the genuine dispute because you can see what it is. There's no disclosure of the guide wires being pins or of the pins traversing the fracture going into the stable bone or those guide wires preventing compression. It's just not there. Were there genuine issues of material fact as to maybe some of the functions performed by various structures? For example, do the holes in May, clearly they performed the function of providing a place where the screw can be inserted and attached to a bone. Was there any evidence or testimony, anything to suggest that, well, maybe those holes could also perform other functions and that those other functions would be relevant to this question of obviousness? For example, they could perform the function of providing a location for stabilizing the end of a pin. There was no discussion that the only facts regarding those holes were Dr. Medoff's declaration saying those holes would perform the function of providing a place to put the screw in to screw the bones up against the plate, causing compression. Was there no testimony or evidence that's saying that those of ordinary skill in the art would recognize that those holes could be used as a means for stabilizing the end of a pin? Again, no, there wasn't. Going back at the time of the invention, which was 1995, there was no evidence that one skill in the art would believe that. The only evidence was that because of the unpredictable results, no one thought that of destabilizing the end of a pin with a hole. In the summary judgment order, the district court found that May showed both pins and plates with holes, but you disputed that, right? You said May doesn't show pins, it shows guide wires. Guide wires don't operate the same way as pins. Yes. They come out. They're not permanent. They don't compress. They don't cross the fracture. They don't go into the bone on the other side. And so I guess my question, maybe like Judge Lin's, is does that really produce a question of fact? If it's clear to me, I agree with you that they don't. Is there really a dispute of genuine issue of fact? Okay. I don't think there is, Your Honor. I would be very happy of getting this if this is reversed and say, okay, there's questions of fact for the jury. That would be the safe way to proceed. But I think it's clear on its face there's nothing in this prior art that has the claimed elements or that it was obvious to combine. They couldn't even rebut the secondary considerations, which we really relied upon. They're secondary. We're not going to prove our case with these secondary considerations. It just shows that it wasn't obvious. So on its face, May doesn't have the critical element, the holes to provide it, the pin to actually slide it while preventing compression and the holes also. The district court made fact findings saying that this all achieved predictable results, kind of cursory, but I imagine you disputed that. Yes. What would be your evidence in dispute of it? The evidence that the results were not predictable would be, one, the prior art, May claims, was so fundamentally different that a slideable pin to fixate a fracture was never used without an external cast that totally immobilized the arm for four to eight weeks from the shoulder down to the wrist. Now what we're doing is instead of using this big external cast, we're going to use a hole in the plate and you're going to get total mobility right after surgery. So it's so different, who knew it would work? Now with regard to... Did your expert say that? Yes. Is that what you attached to... It's Dr. Madoff's declaration. From an engineering perspective, it was this totally structural change from what was the accepted procedures, and that's why surgeons were so skeptical and reluctant, including Stryker, who knew about the pin plate in 1997 but didn't introduce it until 2004. But the unpredictability on it also is that the wrist is a joint. You get full rotation, full translational movement right after surgery, and the pin is moving. It's not stuck in there. It's going to move a little bit, and a little movement in a pin, and you're talking about fracture fragment, very small, can compromise the fusion of the fracture. And so the fact that the pin is not... Your arm is not going to be totally immobilized, and you're going to have total movement of the wrist right after surgery, but the pin there is not stabilized on its near end. It's going to move. That was unpredictable, whether or not that would work to allow the fracture to fuse properly. That's the unpredictability. Mr. Grossman, I think your time is up. You've been asked a lot of questions. We'll give you your rebuttal time back, 3 minutes. Thank you, Your Honor. And if Mr. Vogler needs that time, we'll give it to him too. Thank you, Your Honors, and may it please the Court. The claims are invalid because of the way they were written as apparatus claims. Very important, not method claims, apparatus claims. And how they were interpreted broadly in the prior appeal. The prior interpretation relates to really the key element in this case is the hole. And in that appeal, under the broad claim construction advocated by TriMet, a properly sized hole in the plates was determined to be sufficient structure to perform the stated functions of allowing the pin to slide axially and stabilizing the pin against displacement of the plane of the plate. Now, there were prior discussions about general issues disputed fact. I don't think counsel for TriMet understands the obviousness argument. A lot of the disputes certainly may relate to anticipation. The district court denied the motion relative to anticipation. But as far as the obviousness... He crossed it out on the proposed... He did. Right. And quite frankly, if you want to criticize anyone, you criticize me because I wrote those proposed findings and conclusions of law and I believe they're accurate and I believe they're appropriate and I think a judge can do that. Maybe is it the best way? I don't know. But, you know, I don't think it deserves criticism because there are strikers' findings and conclusions based on expert report of an expert. But on the obviousness analysis, the key features of the prior art really aren't disputed. And here's how it goes. There's no dispute that the prior art had plates with screws to fix these types of fractures. There's no dispute that the prior art used the pinning mechanism to treat fractures where there were small fragments broken away from the main bone. There's no dispute about that. And as far as me, there's no dispute, at least to this extent. It was a plate to be implanted for fractures of the distal end. It had holes of different sizes. One hole was smaller than the other for a guide wire. Now there's a dispute about what that guide wire does, and I understand that, but that's not the main function of our obviousness argument. That goes to anticipation. But despite that, the patent at column 3, line 64, 65, 66, defines a pin as a wire. So it's pretty close. But the analysis goes like this. There's nothing in May to suggest that any of the wires would extend through the fracture. That's right. So there's a difference there. To that extent. And it would be stabilized in bone on the other side. There's nothing in May to suggest that either. That's right, but that goes to anticipation. Well, it's also relevant in the context of obviousness to the extent that you're arguing that it would have been obvious that one ordinary skill in the art to combine, for example, May and Clancy. Well, you have different devices used for different types of surgical procedures. In May, for example, there's a device that's implanted where the patient's wrist is opened up and the device is implanted, whereas the Clancy structure, for example, is percutaneously applied. That's correct. Different type of surgical procedure completely. The Lebovic article indicates use of plates, pins, and screws together. But one way to prove obviousness, and this is our case, is to show that there exists at the time of the invention a known problem for which there was an obvious solution encompassed by the claims. That's our case. If you buy it, I think we're in. If you don't buy it, then we're not in. And what were those known problems? And there's no dispute about this. One is if the fragment was too small, you couldn't use a screw to fix it because it would break it up. So what was done? Percutaneous pinning. Pinning through the fragment, across the fracture, into the stable bone. Clancy did that, taught that. But what was the problem with that? And it was a known problem. The problem was pin migration. The pin would move. Okay? Now that's the known problem that this inventor worked with. The question, then, is with a prior art that's not disputable to the point I think it is, in some respect, it is not disputable what it is, would that have been obvious to make an obvious solution? What do you think the obvious solution would be? Well, prevent the migration. I mean, that would be obvious. Wasn't there something in the record in which your client said that this invention was revolutionary? Is that the word? Those words were used. But, again, remember the first point I made was this. That's a fact question, isn't it? It is a fact question to secondary considerations. Secondary considerations can't control if there's no invention in the first place. But the claims are for an apparatus. Use of simple items like a pin, a plate with holes, and a screw to set the plate. What about the level of ordinary skill in the art? There seems to be a pretty substantial dispute between you both as to the level of skill in the art, which could very well control the outcome of an obvious misdetermination. I'm not so sure there is a dispute. Well, the dispute would be if the level of skill is required to have experience with bones and fractures, then your expert's testimony doesn't meet my Sundance opinion's requirements. And, as such, you have no evidence to support your summary judgment motion. So I think that seems like a pretty substantial factual dispute that would control the outcome of the obvious misdetermination. Well, the question of whether it was a dispute properly raised. There was no dispute at the district court level of that at all. No dispute over what the level of ordinary skill in the art is? I believe so. Were there two battling experts that say different things and you have arguments made by counsel about the level of skill in the art? I think that qualifies as a dispute. No. The finding was a person of ordinary skill in the art had an engineering degree with two to five years of experience in medical devices. And their expert says no, it has to be somebody with bone fracture experience because, you know, a catheter and knowing how to use one doesn't get you to a position where you're qualified to assess bone fragments and pins and guide wires and all of that. Medical devices is really rough. Stents, catheters, there's all kinds of things that someone could be skilled in that would not provide them with skill to be able to assess the obviousness of this invention. The first time I believe that the concern or raising the dispute of potential skill of the art was at the appeal level, not at the lower court level. And let me raise something about the declaration of their expert. And this is important. That was waived. Expert testimony by their expert was waived because they failed to comply with the court's rules of when to file an expert report timely. That issue was raised back in 2007 before the first appeal. The judge ordered no more expert reports by TriMet. And you can find that at A32, entry 45. And they didn't raise that on appeal last time. And now it's the law of the case. Now, listen to where we were put. We had a case where they had no expert opinion on interpreting the prior art after it came back after the claim of construction on the first appeal. We then, because of the evidence that would be available, moved for summary judgment of invalidity, of course. We only had our expert. We only had our expert as what a person of ordinary skill in the art would be. And then they filed a declaration. Now, the court didn't consider their declaration. He didn't expressly raise one or the other, but it clearly didn't consider it because it's waived. There's no expert report. We got blindsided. After the close of discovery, after expert discovery, they come up with their own employee who files a declaration of expert testament. Now, they say he didn't have to. But if you go that route, you have the biggest loophole in patent relegation to avoid expert reports. You just get your own employee, you're better. Say you don't have to be an expert, and then you show up for trial, no expert report, and voila, you're home free. But it doesn't work that way. He was specifically employed to file this declaration because it was a reviewed prior art he didn't have. And all their cases referred to that personal knowledge. So if you really want to get into the experts, there shouldn't be considered. KSR informs that there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. Where in the court's order do you find that articulated reasoning and rational underpinning? Well, it goes back to what I told you was the theory of the case, and I believe it is in the court order. And I believe KSR says this, that if it is shown that there exists at the time of the invention a known problem, and in his opinion the known problems are pieces too small to use screws, if you use a pin for the small piece fragments, we've got a problem of pin migration. And then KSR says if you know that problem, for which there's an obvious solution encompassed by the claims, that's obviousness, that's our case. And that's what we have here. Where is that in the order? I would think you know the order well. Well, I do know the order well. The order states what the problems were and how you went about solving the problem. Was that an obvious solution? And did it obtain a predictable result? I'm looking for the language in the order that meets the standard required by the Supreme Court. Well, if you go to the order out on page 16, it's all laid out starting on paragraph 66 through paragraph 79. Paragraph 66 starts out, one of the ways in which a patent subject matter can be proved obvious is by noting that there existed at the time of the invention a known problem for which an obvious solution encompassed by the patent's claims. Well, it's just a statement of law. It is, and then the analysis went on to set forth what the known problems were and how it would have been an obvious, and it would be a question of law with the known prior art, would it have been obvious to restrain PIN migration by putting it in a hole? I mean, for example, you have paragraph 69. Trimed simply combined elements from two methods well known at the time for setting risk fractures. Okay. But those two methods were different methods. One was an open surgical procedure, and the other was percutaneous. But they used components of the claim of an apparatus claim that performed predicted functions of what we have here, and the only dispute is that— Well, that gets to the question I'm trying to get an answer to. Well, then if you go to paragraph— It's the predicted results. Go to paragraph 71, and then it talks about the problem of PIN migration. Yeah. Okay. Then the common-sense solution would be, well, you want to stabilize the PIN. And I think that's based on the Feinberg Declaration. I think that's common-sense analysis anyway. If the problem is PIN migration, you want to— Of course, paragraph 72 says, well, because a screw can't be used to solve this problem, the logical solution would be to select a prior art plate that had holes. But that's a plate that was used for a different purpose. That plate, the prior art plate, is used to attach bone fragments using screws. But if you think of two screws, what those holes in the screws would do, they would prevent the movement of those screws and displacement. But they'd lock them in. And that's the same mechanism we're trying to do with the PINs, prevent PIN migration. Well, see, that's the analysis that I don't find in the order. Well, I think it is. And I have no idea whether that's what the district court was thinking of or what the record might reflect or whether that's a proper basis for an obviousness conclusion. I mean, a lot of this is either just conclusory or simply, you know, statements that don't relate to the problem at hand. Well, I think that it does. The problem at hand was PIN migration. And the question is, was there an obvious solution encompassed by the claim to prevent it? And putting a PIN or a screw, whatever you want to keep from moving, in the direction would be to put it in a hole. I mean, that's what the holes do. That's what holes do. They constrain. They prevent the movement, whether it's a PIN or a screw or something else. And that is the obviousness of this invention. And it's nothing new. It's nothing more than using an old element that's been used in the past to do exactly as predicted what a hole would do. It would constrain, with its boundaries, the movement. And that's the analysis. Again, it's based off identifying the problem and knowing what it is at the time and coming up with a solution. And our person of ordinary skill in the art, I know Judge Moore has a concern about that one, but I don't believe there was any dispute about who a person of ordinary skill in the art was at the district court level. Well, I look back. You may be right. I can't find anything in the summary judgment. And our person qualifies, and that's the end of it. I don't know if your person qualifies, but they may not. Well, I think he qualifies under the finding of the court of what a person of ordinary skill in the art was. And they bring in this declaration, which is unauthorized, untimely, and it makes interpretation of prior art, which, sure, it raises a dispute, but it's probably not right. Temporary, where does it say the pins are in, or excuse me, the wires are in temporary? It doesn't say that. You can't get it from that. So, but again, that's dispute, if any, goes to anticipation, not obviousness. Thank you, Mr. Vogler. Thank you. Mr. Grossman has three minutes. Just a few points, Your Honor. One was regarding the ordinary skill in the art. Dr. Feinberg, electrical engineer, testified, and that's at page 480, that one skilled in the art would have two years of experience with bone plates. And he testified at page 479 and 480. This was his first case with bone plates. They have the burden, clear and convincing evidence, that this invention was obvious by one of ordinary skill in the art. Dr. Feinberg is admittedly not one of ordinary skill in the art. Oh, he didn't admit that. He went and took it back. I mean, you're stopping short. Yeah, he said exactly what you say he said, but then you go on to read later pages, which, by the way, I had to find at the end of the appendix. They weren't sort of contemporaneous, but he recants that. He says, well, no, it's not bone. Medical devices would be sufficient. So you can't say that his own testimony definitively prevents him from being one of skill in the art because his testimony was a moving target. I'll grant you, but he recanted. Okay. Where else would you point me for your argument, though, that there was a dispute of fact over the level of skill in the art? Because I didn't see anything particular to that in your summary judgment opposition, which is what I was just scanning, because I thought surely you had raised it. I thought I saw it somewhere, but I didn't just find it in your summary judgment opposition. I don't think we did. I think what we said was the jury has a right to consider Dr. Medoff's statements and Dr. Feinberg's statements and make their conclusion. And we also stated that based upon what Dr. Feinberg testified, that he never worked with broken bones or plates. He's not one of ordinary skill in the art. If we ended up sending this back, would you bring a motion that he's not one of skill in the art and under Sundance, therefore, shouldn't be allowed to offer such testimony? Emotionally, we would. Yes. But if we sent it back, the one thing about your brief that surprised me was your desire to be reassigned to a different judge. I thought you wrote it very respectfully, but it's a very extraordinary remedy. And even if we say you got it wrong twice, it doesn't seem to me to be enough to necessarily reassign it. The reason I think it is is the way if, I'm not trying to be presumptuous, but if you do send it back, the way the judge got rid of the case both times, just signing statements of the other side. I can accept if the judge reads everything and articulates a decision, but just to get it, and days after getting the reply brief, just days, I'm briefing this thick. Just signs the proposed judgment and just crosses out proposed and just signs statements of fact and law, just striking out proposed. I think this case warrants a new judge who just doesn't sign off on proposed facts and law that are just not, you know, I think maybe there's some prejudice there. I don't know. But we would, again, not being presumptuous, prefer a little more attention. Thank you, Mr. Grossman. Thank you. Thank you. Thank you.